Wellington E. Webb Executive Director Department of Regulatory Agencies State of Colorado 1525 Sherman Street, Room 110 Denver, CO 80203
Dear Mr. Webb:
This opinion letter is in response to your November 12, 1985 memorandum requesting a formal attorney general opinion about the need for blanket bond coverage for state chartered commercial banks.
QUESTION PRESENTED AND CONCLUSION
Your request for an attorney general's opinion presents the question:
May a state chartered commercial bank continue to operate if its blanket bond is cancelled and its efforts to procure blanket bond coverage continue in the negotiation stages beyond the expiration date of the original blanket bond?
 Yes, a state chartered commercial bank may continue to operate if its blanket bond is cancelled. While the Colorado bank commissioner and the Colorado banking board have discretion to determine whether operating without fidelity insurance is an unsound banking practice and therefore have discretion to subject the bank to regulatory action, including closure and involuntary liquidation, there are no statutes or regulations which require an extreme measure such as closure for operating without fidelity insurance.
ANALYSIS
Section 11-3-120, C.R.S. (1973), mandates that the directors of a state commercial bank require fidelity bond coverage for the officers and employees of the bank. The directors are required to determine the amount of the bond with the approval of the state bank commissioner:
 11-3-120. Fidelity bonds and other insurance. (1) The directors of a state bank shall require good and sufficient fidelity bonds on all active officers and employees, whether or not they draw salary or compensation, which bonds shall provide for indemnity to such bank on account of any losses sustained by it as the result of any dishonest, fraudulent, or criminal conduct by them acting independently or in collusion or combination with any person. Such bonds may be in individual, schedule, or blanket form, and the premiums therefor shall be paid by the bank.
 (2) The said directors shall also require suitable insurance protection to the bank against burglary, robbery, theft, and other insurable hazard to which the bank may be exposed in the operations of its business on the premises or elsewhere.
 (3) The directors shall be responsible for prescribing, at least once in each calendar year, the amount or penal sum of the bonds and policies specified in this section and the sureties or underwriters thereon after giving due and careful consideration to all known elements and factors constituting such risk or hazard. Such action shall be recorded in the minutes of the board of directors and thereafter be reported to the commissioner and be subject to his approval.
The administrative rules of the state banking board mandate that any contract for blanket bond insurance written in Colorado require the bonding company to give 90 days' notice of cancellation or nonrenewal to the bank and to the bank commissioner:
 CB 101.29 Bankers blanket bond. (1) Any bankers blanket bond procured by a state bank to satisfy the requirements of section 11-3-120, C.R.S. (1982 Repl. Vol.) (sic) shall provide that the bonding company providing the bond shall give at least ninety days notice of cancellation or non-renewal of such bond to the bank and to the State Bank Commissioner.
3 CCR 701-1, at 41 (12-85).
The rule was amended by the banking board on an emergency basis on November 21, 1985 to add the requirement that the bank commissioner receive notice from the bank of a lapse of fidelity coverage and monthly reports of the bank's good faith efforts to obtain such coverage:
 CB 101.29 Bankers blanket bond. (2) Any state bank which experiences difficulty in obtaining and maintaining blanket bond coverage shall notify the State Bank Commissioner:
 a. When there is a lapse in fidelity coverage; and
 b. Monthly thereafter concerning actions and progress in obtaining such coverage.
The substance of the banking board's emergency rule parallels the current practice that the Office of the Comptroller of the Currency follows when a national bank is having trouble procuring or maintaining fidelity insurance. See 73-78 Federal Banking Law Reporter Decisions (CCH) para. 79,176.
The bank commissioner also has the power to require a state commercial bank to "maintain adequate insurance against such other risks as the commissioner may determine to be necessary and appropriate for the protection of depositors and the public." Section 11-2-106(1)(i), C.R.S. (1973).
There is no requirement that the bank commissioner and the banking board close a state bank operating without fidelity insurance. However, through its derivative powers to determine what constitutes an unsound banking practice, the banking board may take action against a state commercial bank operating without fidelity insurance. Pursuant to section 11-2-103(1)(f), C.R.S. (1973), the banking board has the power to order any person to cease engaging in any unsound banking practice. Further, the bank commissioner may take possession of a state bank if the banking board finds that the bank's business is being conducted in an unsound manner:
 11-5-102. Involuntary liquidation by commissioner — reorganization. (1) Except as otherwise provided in this code, only the commissioner may take possession of a state bank if, after a hearing before the banking board, the banking board shall find: The bank's capital is impaired or it is otherwise in an unsound condition; or the bank's business is being conducted in an unlawful or unsound manner; . . .
The banking board has the power to suspend the directors of a state commercial bank who fail to comply with a cease and desist order or who violate the banking code or a lawful regulation or order issued under the code. Section 11-2-103(2), C.R.S. (1985 Supp.). The banking board may also impose civil penalties after notice and hearing, for failure to comply with a cease and desist order. Section 11-2-117, C.R.S. (1985 Supp.).
There are presently no state commercial banks in Colorado operating without fidelity insurance.
SUMMARY
In conclusion, a state chartered commercial bank may continue to operate after expiration or cancellation of its blanket bond. However the bank may be subject to regulatory action, depending on the overall financial condition of the bank and the circumstances surrounding the loss or inability of the institution to procure or maintain adequate fidelity coverage.
Very truly yours,
 DUANE WOODARD Attorney General
BANKS AND BANKING INSURANCE SURETY
Section 11-3-120, C.R.S. (1973)
REGULATORY AGENCIES, DEPT. Banking, Div. of
A state commercial bank may continue to operate after cancellation of its blanket bond.